**Robert Henry SHEPHERD, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00692–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 28, 2007.

Rehearing Overruled Aug. 9, 2007.

William Paul Mewis, Katy, for Appellant.

Bridget Holloway, Houston, for State.

Panel consists of Justices YATES, EDELMAN, and FROST.

## MAJORITY OPINION

LESLIE B. YATES, Justice.

Appellant Robert Henry Shepherd challenges his conviction for the offense of possession of marijuana of more than two ounces and less than four ounces. After the trial court denied his motion to suppress a bag of marijuana seized during a warrantless search of his residence, appellant pleaded guilty and was sentenced to ten days' confinement in the Harris County Jail. In a single issue, appellant contends the trial court erred in denying his motion to suppress. We affirm.

## I. Factual and Procedural Background

Araceli Silva, who lived directly across the street from appellant for sixteen years, testified that on December 8, 2005, she noticed the front door to appellant's residence was open and his van was missing from the driveway. Concerned about a possible break-in because appellant typically used his garage door for entrance and exit and never left his front door open, Silva contacted James Mosley, who lived next door to appellant. Mosley approached appellant's residence, walked through the open door about one or two feet, and called out for him. After receiving no response, Mosley and Silva decided to call the police.

Deputies Kraig Williamson and Jim Halm of the Harris County Sheriff's Department responded to the open-door call at appellant's address. The officers testified that these calls could involve a possible burglary, an assault victim, or an otherwise injured homeowner inside the residence. Deputy Williamson stated that, upon arrival, he and Deputy Halm talked to Mosley, who informed them appellant's door had stood open "for a period of time" and that he did not think anyone was home. According to Mosley, he also told the officers that Silva had expressed concern about appellant and that he had entered appellant's residence, called out for him, and received no response. Deputy Williamson could not remember Mosley specifically stating he had called out for appellant and received no response, and Deputy Halm maintained that neither officer spoke to the neighbors until after they swept the house.

The officers then approached appellant's door and announced their presence. Receiving no answer, the officers entered appellant's residence with guns drawn to look

for possible burglars or injured persons. During their sweep of the residence, the officers observed a clear plastic bag containing what appeared to be marijuana on a table in the living room. Deputy Williamson seized the marijuana, which appellant confirmed was his upon returning shortly thereafter. The officers arrested appellant, and he was subsequently charged with possession of marijuana.

Appellant filed a motion to suppress the bag of marijuana, which the trial court denied after a hearing. The court recited the following findings of fact and conclusions of law: (1) On December 8, 2005, Silva became "alarmed" because she observed appellant's front door left open, which was out of the ordinary based on her experience, and, due to her concern, she contacted Mosley, (2) Mosley entered appellant's residence and, upon a cursory inspection, called the police because he and Silva did not know what or who, if anybody, was inside, (3) Deputies Williamson and Halm arrived at the scene and found the front door open in accordance with the dispatch, (4) pursuant to the exigent circumstances and their caretaking role, the officers entered the residence to make sure no intruder with any weapons was inside that could be a danger to themselves or others, (5) the deputies observed in plain view a baggie containing what they believed to be marijuana, and they seized it, (6) the witnesses at the hearing were credible and believable, and (7) the warrantless entry was justified by exigent circumstances, and there was probable cause to seize the marijuana in plain view.

Appellant now challenges his conviction, claiming the trial court erred in denying his motion to suppress.

## II. Standard of Review

We review the trial court's decision on a motion to suppress for an abuse of discretion. *See State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006). We give almost total deference to a trial court's express or implied determination of historical facts and of application-of-law-to-fact questions that turns on an evaluation of credibility and demeanor. *See id.; Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We review *de novo* the court's determination of application-of-law-to-fact questions not turning on credibility and demeanor, including the court's application of the law of search and seizure to such facts. *See Dixon,* 206 S.W.3d at 590; *Guzman,* 955 S.W.2d at 89. We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. *Dixon,* 206 S.W.3d at 590. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

## III. Analysis

Appellant contends the warrantless search of his residence was not justified either under the exigent circumstances doctrine or emergency doctrine. He maintains that an "open door with no one home, in broad daylight, is not the most unusual set of circumstances to justify a warrantless entry to [a]ppellant's home" under either doctrine.

To validate a warrantless search based on the exigent circumstances doctrine, the State must satisfy a two-step process. *Gutierrez v. State,* 221 S.W.3d 680, 685 (Tex.Crim.App.2007). First, probable cause must exist to enter or search a specific location. *Id.* In the context of warrantless searches, probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality or evidence of a

crime will be found. *Id.* Second, an exigency that requires an immediate entry to a particular place without a warrant must exist. *Id.* Three categories of exigent circumstances justify a warrantless intrusion by police officers: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance, (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous, and (3) preventing the destruction of evidence or contraband. *Id.* If the State does not adequately establish both probable cause and exigent circumstances, then a warrantless entry will not withstand judicial scrutiny. *Id.* at 685–86. The exigent circumstances doctrine applies when the police act in their crime-fighting role, which includes detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *See Laney v. State,* 117 S.W.3d 854, 861 (Tex.Crim.App. 2003).

 The emergency doctrine (also known as the "emergency-aid" doctrine) holds that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *See Laney,* 117 S.W.3d at 860 (quoting *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Unlike the exigent circumstances doctrine, the emergency doctrine applies when the police act in their community caretaking role and is limited to the caretaking functions of protecting or preserving life or avoiding serious injury. *Id.* at 860, 861 (noting also that community caretaking functions are "totally divorced from the detection, inves-

tigation, or acquisition of evidence relating to the violation of a criminal statute"). To determine whether a warrantless search was justified under the emergency doctrine, we apply an objective standard based on the police officer's conduct and the facts and circumstances known to the officer at the time of the search. *See id.* at 862. The search must be strictly circumscribed by the exigencies which justify its initiation, and, if the doctrine applies, the police may seize evidence in plain view. *Id.*

While we agree with the trial court's conclusion that the warrantless search of appellant's residence did not violate the Fourth Amendment, we disagree with the court's application of the exigent circumstances doctrine. We conclude, rather, the search was justified under the emergency doctrine. Upon arriving at his residence, the officers found appellant's front door open, and Mosley informed them the door had stood open for a period of time and that appellant did not respond to calls for his name.[1] Deputy Williamson testified that it is not normal for a person to leave the door wide open, and both officers stated that, based on their experience, open-door calls to residences can involve assault victims or persons otherwise injured inside. *See Wiede v. State,* 214 S.W.3d 17, 27–28 (Tex.Crim.App.2007) (holding that courts consider training, knowledge, and experience of law enforcement officials when determining probable cause under Fourth Amendment); *Barocio v. State,* 158 S.W.3d 498, 498 (Tex.Crim.App.2005) (noting officer's experience that it would not be unusual for burglars to smoke marijuana in home they were burglarizing in upholding warrantless search of appellant's

---

1. We acknowledge the witnesses conflicted as to whether Mosley spoke with the officers before they searched appellant's residence and to the specific information he relayed to them. However, viewing the evidence in the light most favorable to the trial court's conclusion, we conclude the trial court could have impliedly found that Mosley spoke with the officers and relayed this information. *See Dixon,* 206 S.W.3d at 590.

residence under exigent circumstances doctrine where officers smelled marijuana emanating from appellant's residence). Mosley also relayed his and Silva's concern for appellant to the officers, and Deputy Halm noted that "if someone calls, obviously, they were upset enough to call the police about it." The Court of Criminal Appeals, in applying the emergency doctrine, has emphasized the officer's reasonable belief that concern expressed over an occupant is genuine, and the trial court found these witnesses' testimony credible. *See Janicek v. State,* 634 S.W.2d 687, 691 (Tex.Crim.App. [Panel Op.] 1982); *see also Rauscher v. State,* 129 S.W.3d 714, 722 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd); *Celani v. State,* 940 S.W.2d 327, 332 (Tex.App.-San Antonio 1997, pet. ref'd). As such, under these circumstances, we find the facts known to the officers could establish a reasonable belief that someone inside appellant's residence needed immediate aid.

We therefore hold that the search was justified under the emergency doctrine, that the police properly seized the bag of marijuana in plain view, and that the trial court did not err in denying appellant's motion to suppress such evidence. Accordingly, we affirm the trial court's judgment.

RICHARD H. EDELMAN, Justice, dissenting.

Although it was unquestionably prudent in this case for the officers, *in an abundance of caution,* to enter appellant's house to *verify* that nothing was wrong, the circumstances did not satisfy the requirements of the emergency doctrine so as to make any evidence they found in the house admissible.

Before entering appellant's home, the officers in this case knew only that the front door had been left open, no one had responded when a neighbor or police had called through the doorway, and the neighbors believed that appellant was not home. These facts do not support an objectively reasonable belief that anyone was even in the house, let alone that immediate action was needed to protect or assist them.

There being no cases that support applying the emergency doctrine under these circumstances, the majority opinion instead contends that the lack of an objective basis is overcome by the officers' knowledge and experience that open door calls to residences *can* involve assault victims, injured persons, and the like. However, without additional facts objectively suggesting that any such situation *was* actually occurring,[1] hypothetical possibilities do not meet the standard. Nor can our State

---

1. *Compare Brigham City, Utah v. Stuart,* —— U.S. ——, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006) (holding that emergency doctrine applied because the officers were confronted with violence then occurring within the home); *Laney,* 117 S.W.3d at 863 (holding that emergency doctrine applied because there would have been a substantial risk of harm to the children if left in the home alone); *Brimage,* 918 S.W.2d at 501 (holding that emergency doctrine applied because complainant had been missing for several days and was last seen near appellant's residence); *and Janicek v. State,* 634 S.W.2d 687, 691–92 (Tex.Crim.App. [Panel Op.] 1982) (holding warrantless search was justified un-der the emergency doctrine because there was every indication that appellant was in the house, appellant had a psychiatric history, and there had been reports of a gun shot in the area); *with Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (holding that emergency doctrine did not apply because all persons had been accounted for before the search of the residence began); *Bryant v. State,* 660 N.E.2d 290, 300–01 (Ind.1995) (holding that emergency doctrine did not apply based on belief that someone may have been in need of aid when there was no evidence that a violent crime had or was about to occur).

provide appellant less Fourth Amendment protection than the United States Constitution requires. *See Autran v. State,* 887 S.W.2d 31, 36–37 (Tex.Crim.App.1994).

More importantly, if circumstances as innocuous as this can justify police entry into private homes, then the emergency doctrine exception will largely swallow the Fourth Amendment exclusionary rule in this context and render other exceptions to the warrant requirement unnecessary.