**AFFIRM; and Opinion Filed November 13, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00931-CR

**DAPHNE HICKS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-34378-N**

## MEMORANDUM OPINION
Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice O'Neill

The State charged appellant Daphne Hicks with possession of five pounds or less but more than four ounces of marijuana. Appellant filed a motion to suppress, which the trial court denied. He then pleaded not guilty and proceeded to trial. The jury returned a guilty verdict. The trial court assessed two years' confinement in state jail, probated for five years, with the condition of serving 180 days in jail. In a single issue, appellant challenges the trial court's denial of his motion to suppress. The State responds officers acted appropriately under the emergency doctrine exception to a warrantless entry into a home. We affirm the trial court's judgment.

### Background

On May 5, 2011, Officers Jonathan Rowan and Ryan Turner responded to a suspected domestic violence call at an apartment complex in Irving. The police dispatch told officers an

anonymous neighbor reported screaming and arguing from inside the apartment. Officers were familiar with the apartment because they had responded to another domestic call a few months earlier.

Upon arrival, officers heard a male voice "yelling and cussing very loudly" at someone. Although dispatch reported the presence of a male and female, Officer Rowan did not hear a woman's voice. He only heard the male yelling. Officer Rowan testified he was concerned for the person being yelled at, and he believed the person could have been hurt. They also smelled the strong scent of burnt marijuana coming from the apartment.

After about a minute, officers knocked on the door. Officer Rowan testified it immediately got quiet; however, he could hear someone moving and shuffling things inside. Officer Rowan then tried to look through the peep hole but could not see anything. Given the nature of the situation, he decided to unscrew the peephole, push it inside the door, and then look inside the apartment. He testified the apartment was in complete disarray. Officers knocked again, announced themselves as police, and said someone needed to answer the door or they would force it open. Officer Rowan knocked four or five more times before appellant opened the door about a foot. The marijuana smell was even stronger after appellant opened the door.

When asked about the situation, appellant said nothing was going on. Officers asked for consent to enter the apartment, but appellant refused. Officer Rowan then told appellant to step back because he did not have a choice. Officers than entered the apartment.

Several other investigating officers testified it was obvious that an argument had taken place inside the apartment. Broken glass covered the floor. Chairs were flipped upside down, and the bed had been pulled out into the hallway. They also saw a female passed out on the couch.

Within plain view, officers also observed marijuana cigarettes on the kitchen island, a grinder, a digital scale manual, and tin foil cut into squares. Appellant was arrested for possession of drug paraphernalia and taken to jail. Officers then requested a search warrant. Upon execution of the warrant, officers found money, pill bottles, and marijuana in the bedroom closet. Appellant was later charged with possession of five pounds or less but more than four ounces of marijuana.

During the suppression hearing, appellant argued Officer Rowan violated his rights against unreasonable searches and seizures when he unscrewed the peep hole and looked inside without a warrant or any justifiable exception to a warrantless entry. The State argued given the nature of the call–responding to domestic violence–officers acted accordingly under the emergency doctrine.

The trial court agreed with the State and denied appellant's motion. Although the court did not enter findings of fact and conclusions of law, it stated the following on the record in support of its denial:

> The Court is of the opinion that under the Texas law the rights of the State to protect its citizens under the police power of the State has to be balanced upon the citizen's constitutional rights in the home in this case. The Court is of the opinion that the actions of the police department are justified as being that required by an emergency situation, and the public policy of the State to protect women in family violence situations.

This appeal followed.

### Standard of Review and Applicable Search and Seizure Law

We apply a bifurcated standard of review to the trial court's ruling on a motion to suppress evidence. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts and apply a de novo review to the trial court's application of the law to the facts. *Id.* The trial court is the sole trier of fact, the judge of witness credibility, and the weight to be given to witness testimony. *Id.* When,

–3–

as here, the trial court does not make explicit findings of fact, the appellate court must view the evidence in the light most favorable to the trial court's ruling and assume the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Id.* The trial court's ruling "will be upheld on appeal if it is correct under any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

Both parties agree this case turns on whether the "emergency-aid" doctrine applies. This doctrine holds that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003). Unlike the exigent circumstances doctrine, the emergency doctrine applies when the police act in their community caretaking role, and the doctrine is limited to the caretaking functions of protecting or preserving life or avoiding serious injury. *Shepherd v. State*, 230 S.W.3d 738, 742 (Tex. App.—Houston [14th Dist.] 2007), *aff'd*, 273 S.W.3d 681 (Tex. Crim. App. 2008).

To determine whether a warrantless search was justified under the emergency doctrine, we apply an objective standard based on the police officer's conduct and the facts and circumstances known to the officer at the time of the search. *Id.* The officer must have a reasonable belief that he must act to preserve life or avoid serious injury. *Laney*, 117 S.W.3d at 861. The search must be strictly circumscribed by the exigencies which justify its initiation, and, if the doctrine applies, the police may seize evidence in plain view. *Shepherd*, 230 S.W.3d at 742.

### Discussion

In his sole issue, appellant argues the trial court erred by denying his motion to suppress because Officer Rowan violated his Fourth Amendment right against an unlawful search and seizure when he unscrewed the peephole on the front door and looked inside without a warrant.

He argues the emergency aid exception "requires probable cause to suspect an offense **and** facts known to the officers that are not as consistent as innocent activity as criminal activity." (emphasis in original). He asserts screaming and yelling alone is as consistent with non-criminal communication as with criminal activity and cannot justify a warrantless entry into a home. Further, he states the smell of marijuana emanating from the apartment cannot support probable cause to justify a warrantless entrance into his home.

We begin by noting appellant is asserting an inaccurate standard of review and an overruled, inapplicable doctrine of law. The application of the emergency aid doctrine does not require an officer to have probable cause that an offense is in progress. Rather, the officer must have a reasonable belief, given the known circumstances, that he must act to preserve life or avoid serious injury. *Laney*, 117 S.W.3d at 861. This does not rise to the level of probable cause. *See, e.g., State v. Simmang*, 945 S.W.2d 219, 223 (Tex. App.—San Antonio 1997, no pet.) ("Reasonable suspicion is a less demanding standard than probable cause because it can be established with information that is different in quantity or content and even less reliable than that required to show probable cause."). Further, the Texas Court of Criminal Appeals has determined the "as consistent with innocent activity as with criminal activity" construct is no longer a viable test for determining reasonable suspicion. *See Woods v. State*, 956 S.W.2d 33, 38–39 (Tex. Crim. App. 1997). Rather, one must consider the totality of the circumstances. *Id*. at 38. However, even if the doctrine remained viable, it developed in the realm of temporary detentions, which does not apply to the present facts. Accordingly, we shall review the totality of the circumstances, as known to the officers at the time, and determine whether Officers Rowan and Turner had a reasonable belief they needed to remove the peep hole because of an emergency situation.

When Officers Rowan and Turner arrived at appellant's apartment, they had received information from a 9-1-1 dispatcher that an anonymous caller reported hearing his female neighbor "screaming" and a male was "probably hitting" the female. A short time passed between the 9-1-1 call and the officers' arrival.

Upon their arrival, they only heard a male voice inside yelling. They knocked on the door multiple times and announced, "Police." The yelling then abruptly stopped, and they heard things shuffling around the apartment. Officer Rowan testified due to the nature of the call, "it was my thought, standing outside there, there could be someone inside hurt." He believed he was dealing with a situation in which there was a possibility of serious bodily injury or death occurring. He specifically testified that because he could only hear the male voice screaming, he was concerned the female might be unconscious and could not yell for help. Officer Turner also testified he was concerned when they only heard one voice that the other person inside was "either unconscious or injured or worse." Thus, officers unscrewed the peep hole to see if anyone inside was injured. Officer Rowan further admitted he removed the peep hole rather than kicking in the door because he was trying to minimize damage and expense for the apartment complex.

Officer Rowan continued to emphasize throughout his testimony his main concern was "to make sure there was no one inside that needed assistance," and the smell of marijuana or the investigation of any drug activity was not the reason for their presence at the apartment. They were investigating a possible domestic dispute. Officer Turner testified that given his past experiences, he had forced entries on domestic calls when the situation was of a safety concern.

Reviewing the totality of the circumstances in the light most favorable to support the trial court's judgment, we conclude the trial court did not abuse its discretion in determining the emergency aid doctrine applied to these facts. Accordingly, appellant's sole issue is overruled.

**Conclusion**

We affirm the trial court's judgment.

/Michael J. O'Neill/
_____
MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120931F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAPHNE HICKS, Appellant

No. 05-12-00931-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-34378-N.
Opinion delivered by Justice O'Neill.
Justices Lang-Miers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of November, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE